```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

                              )
                              )
LORI WHATLEY,                 )
                              )
                              )   CIVIL ACTION NO. 06-0779
          Plaintiff,          )
                              )
                              )
     v.                       )
                              )
                              )
MICHAEL J. ASTRUE,            )   JUDGE GARY LANCASTER
Commissioner of Social        )   MAGISTRATE JUDGE CAIAZZA
Security,                     )
                              )
                              )
          Defendant.          )
                              )
```

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Acting pursuant to 42 U.S.C. § 405(g), Lori Whatley ("Whatley" or "the claimant"), appeals from an April 17, 2006 decision of the Commissioner denying her application for Supplemental Security Income benefits. Cross Motions for Summary Judgment are pending. It is respectfully recommended that Whatley's Motion (Doc. 13) be granted insofar as she seeks a remand, and that the Motion filed by the Commissioner (Doc. 17) be denied.

### II. REPORT

#### A. PROCEDURAL BACKGROUND

On October 12, 2004, Lori Whatley filed her second

application for Supplemental Security Income benefits,[1] alleging that she had been disabled since January 1996. Whatley listed the condition limiting her ability to work as "I lost consciousness". (R. 152). When asked to describe how this condition limited her ability to work, she answered that she had difficulty with people, a hard time controlling depression, and lacked good social skills. (R. 153). After Whatley's application was denied, she requested a hearing.

On February 3, 2006 a hearing took place before an administrative law judge ("ALJ") in Latrobe, Pennsylvania. Whatley, who was represented by counsel, and a vocational expert offered testimony. At the time of the hearing, Whatley was a thirty-eight year old divorced high school graduate with a technical petrochemical certificate. (R.34). She had worked most recently as a janitor for about one month during the spring of 2003.(R.36). She also had experience as a video store manager, and as a "fire" and "hole" watcher and as a general laborer in a Texas oil refinery.(R. 40,44). Her other past relevant work included tending the drive-up window at a Chinese restaurant, (R.43), and operating a forklift. (R.55).

Addressing the grounds for her claim, Whatley told the ALJ that she suffered from pain in her hips and right knee, and that

---

[1] Whatley's initial application was denied in October 2003, and she did not appeal. For purposes of the current application, the Commissioner limited his consideration to evidence dated after October 24, 2003.

she carried a cane in her right hand to help with her pain and her balance. She testified that she had arthritis in both knees, her hips, and her lower back. She had received hip injections the day prior to the hearing. (R. 45-46).

The ALJ then listed the medical impairments mentioned in the record as intermittent explosive disorder, adjustment disorder, polysubstance abuse, dysthymic disorder, alcohol dependency, impulse control disorder, mixed personality disorder, bipolar II disorder, obesity, lumbar strain, left knee and hip pain consistent with arthritis, degenerative joint disease, status post left knee arthroscopy, and asthma.(R. 46). Whatley confirmed that he had correctly summarized her conditions.

Whatley's medications included Naproxen and Tylenol for pain and inflammation. (R. 49). She attended two twelve-step meetings per week, testifying that her depression had worsened since she had "been fighting drinking." (R. 50). She stated that she had not had a drink since October 2005.

When questioned further about her physical symptoms, Whatley testified that she could lift about five pounds and sit for about half-an-hour before her lower back felt numb. Her ability to stand was limited to about ten minutes due to the pain in her knee. (R. 51). She also testified that she saw a psychiatrist once per month, and that her physicians had told her that she was unable to work. (R. 53). She had been forced to discontinue some of her anxiety medication because she was "too unfocused, too sleepy

during the afternoon." (R. 54).

Discussing her daily activities, the claimant testified that she tried to read a lot and watched movies. When she was asked about her ability to concentrate, though, she stated that she was able to read only a couple of pages before she was "doing something else in her apartment." Id. It took her a month to read two chapters in a book because she would "flip to the tv, flip for awhile, clean [her] apartment. I'll do laundry. I'll do - I do lots of little things." Id. When asked whether she could do housework, Whatley answered that she had a friend help her do dishes, laundry, and grocery shopping. (R. 54-55).

At the conclusion of the claimant's testimony, the ALJ questioned a vocational expert. The expert was asked to assume a hypothetical individual who was Whatley's age, with her educational and employment experience who was limited to a light range of work, occupations that could be performed with a cane for ambulation, occasional postural maneuvers, occasional pushing and pulling with lower extremities, as well as environments free of temperature extremes and humidity. The hypothetical person was also limited occupations not requiring exposure to dangerous machinery or unprotected heights. He further asked the vocational expert to assume that this person was limited to simple routine repetitive tasks not performed in a production or quota-based context, simple work-related decisions, few workplace changes, occasional interaction with supervisors, co-workers and the

general public, and was unable to drive except to commute to and from work. (R. 59). The ALJ then asked the expert whether that hypothetical person would be able to perform her past relevant work. The expert answered that the restrictions placed on postural movements would exclude operating a forklift. Asked if there were jobs in the sedentary category that both could accommodate the hypothetical limitations and were available in significant numbers in the national and local economies, the expert identified the occupations of billing clerk, cafeteria cashier, general office worker, and order clerk. He also stated that each of these job categories could be performed with a sit/stand option. Adding the need for a cane for balance would eliminate these jobs. (R. 60-61). Finally, the expert testified that an individual who was required to miss more than five days of work per year beyond contracted leave or was off task for more than six minutes in each hour of an eight hour workday, would not be able to perform any job available in the local or national economies.(R. 62-63).

 On February 24, 2006, the ALJ issued a decision concluding that because Whatley was capable of performing a number of jobs identified by the vocational expert, she was not disabled, and was not, therefore, entitled to Supplemental Security Income benefits.

 On April 17, 2006, the Appeals Council denied Whatley's request for review, making the ALJ's decision the final decision of the Commissioner. This timely appeal followed.

## B. **THE ALJ'S OPINION**

The ALJ arrived at his finding that Whatley was not disabled within the meaning of the Social Security Act ("the Act") by applying the sequential five step analysis articulated at 20 C.F.R. §§ 404.1520(a) and 416.9020(a).[2] The claimant bears the burden of proof at the first four steps, and the Commissioner bears the burden at the fifth. *See* Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001). The ALJ resolved this matter at Step Five.

The ALJ found that Whatley had a number of severe impairments, including degenerative joint disease in her knees, asthma, obesity, lumbar strain, left knee and hip pain, intermittent explosive disorder, adjustment disorder, polysubstance abuse, dysthymic disorder, impulse control disorder, bipolar disorder, mixed personality disorder, and status post left knee cystoscopy. (R. 15). In this appeal, the claimant challenges the ALJ's findings of fact and conclusions of law only as they

---

[2]The familiar five steps are as follows: (1) If the claimant is performing substantial gainful work, she is not disabled; (2) If the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled; (3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) If the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled; (5) Even if the claimant's impairment or impairments prevent her from performing her past work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

relate to the identified mental impairments. Accordingly, the court, too, limits its focus to the ALJ's discussion of Whatley's non-physical complaints.

The claimant's dysthymic and bipolar disorders were evaluated against and found not to meet the requirements of Listing 12.04. Her explosive, impulse control, and mixed personality disorders were evaluated as personality disorders. Discussing these mental impairments, the ALJ noted that Whatley was able to live alone, and to clean, sort laundry, cook, and run errands with help. The record showed that she watched television, had lunch at a local church once per week, and attended two twelve-step meetings per week. Based on these activities, and referencing nothing else in the record, the ALJ wrote: "It is therefore concluded that the claimant has no more than a mild restriction of daily activities caused by her psychological condition." (R. 16).

The ALJ next addressed Whatley's alleged difficulties interacting with family, friends, neighbors, and the public. Again, the ALJ noted that the claimant was able to run errands and grocery shop with a friend. She attended church luncheons and church meetings twice per week. Again, apparently relying on this information alone, the ALJ stated: "Accordingly, it is concluded that the claimant has no more than a mild restriction of daily activities caused by her psychological conditions." Id.

The ALJ then listed Whatley's activities a third time, adding that her concentration was adequate to allow her to watch "a lot

of television movies." Based on these factors and citing nothing else, the ALJ concluded that Whatley "has no more than moderate difficulties maintaining social functioning." Id.  After listing the claimant's activities yet a fourth time, the ALJ found that Whatley had "moderate difficulties maintaining concentration, persistence, or pace." Id.

Before turning to the medical evidence and without specific citation to the record, the ALJ wrote: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to engage in sedentary work that entails occasionally lifting and carrying 10 pounds, frequently lifting and carrying lesser weights, and standing and walking for one-third of an eight hour day." (R. 17).

Next, the ALJ discussed the evidence bearing on Whatley's physical and mental problems. He did so in general narrative paragraphs, string citing exhibits. The structure of the opinion makes it difficult to tell when, at what facility, and by which care provider Whatley was seen, and it complicates the court's assessment of whether there is substantial evidence to support the ALJ's ultimate finding with respect to Whatley's disability. Nonetheless, the court turns to that task.

### C. STANDARD OF REVIEW

The Act limits judicial review of the Commissioner's final

decision regarding benefits to whether the factual findings are supported by substantial evidence, <u>Brown v. Brown</u>, 845 F.2d 1211, 1213 (3d Cir. 1988), and whether the correct law was applied. <u>Coria v. Heckler</u>, 750 F.2d 245, 247 (3d Cir. 1984).

### D. **ALLEGED ERRORS IN THE ALJ'S EVALUATION OF THE EVIDENCE**

Each of the claimant's allegations of error is based on the ALJ's failure to consider specifically certain items of evidence in the record.[3] Because the court agrees that the ALJ's discussion of the evidence was incomplete, it recommends that this matter be remanded for a reassessment of the record.

#### 1. **Disability Determinations for State Public Assistance**

The claimant contends that the ALJ failed to consider the impact of medical forms showing that she was disabled for purposes of receiving benefits from the Pennsylvania Department of Public Assistance. In May 2004, Dr. Fruman completed a form indicating that Whatley was temporarily disabled during the period extending from May 3, 2004 through August 3, 2004. (R. 197). In July 2004, Dr. Brenneman signed a similar form stating that the claimant was

---

[3]Whatley also argues that the ALJ's faulty analysis of the evidence necessarily led to error in the formulation of hypothetical questions posed to the ALJ. If, on remand, the ALJ concludes that the findings regarding Whatley's work-related limitations should be modified so as to alter the hypothetical, he will need to take steps to formulate a different question and pose that question, via interrogatory or otherwise, to a vocational expert familiar with the facts of this case.

9

temporarily disabled from April 2004 through November 2004. In December 2004, a third physician, Dr. Arul, concluded that Whatley's temporary disability extended from November 2004 through April 10, 2005. The ALJ made reference to these three reports, stating that none of them indicated that Whatley had been or was expected to be disabled for a period of twelve continuous months. He did not consider that these three forms, considered together, spanned a year - or weeks shy of a year.

More important, however, is the fact that the ALJ failed to mention a fourth state medical form completed by Dr. Last on May 10, 2006.  Based on his review of medical records and Whatley's clinical history, Dr. Last found that her period of temporary disability, based on anxiety, emotional problems, and poor concentration, had begun in April 2003 and could be expected to continue until April 2006. The ALJ failed to address the fact that Dr. Last's determination covered a period of time that would have satisfied the duration requirement applicable to federal supplemental security income benefits. Because the only reason given for his rejection of the opinions expressed in any of the other three forms was the period of expected disability, the ALJ should have addressed Dr. Last's report.

The court recognizes that a physician's finding of disability for purposes of a state program is not binding on the Commissioner. *See* 20 C.F.R. §416.927(e)(1). However, where the ALJ's only stated ground for failing to credit the disability

findings embodied in the three forms is the period of disability, and where a fourth form that spans the requisite period is ignored a problem arises. The ALJ is obligated to consider all of the evidence in the record, and "give some reason for discounting the evidence [he] rejects." Plumer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The discussion of the record evidence must be thorough enough to permit the reviewing court to determine "whether probative evidence was considered or simply ignored." Green v. Barnhart, No. 05-1719, 2006 WL 1791264 at *4 n.4 ( E.D. Pa. June 26, 2006)(citing Cotter v. Harris, 642 F.2d 700, 705 (1981)). That determination is impossible here.

   The court is also troubled by the ALJ's treatment of other evidence in the record. In arriving at the conclusion that Whatley was not disabled within the meaning of the Social Security Act, the ALJ stated that he had given "great weight" to the information contained in Exhibit 9F - the records relating to Whatley's October 2004 hospitalization for depression, suicidal ideation, and threats of hurting her roommate.  In his summary of Whatley's hospitalization, Dr. Mishra assigned Whatley a GAF score of 38. "A GAF score of 40 -50 denotes 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000).' [G]AFs from 45-50 indicate that the person

cannot perform competitive work on a sustained basis . . . . " Schweighauser v. Barnhart, No. 06-1397, 2006 WL 33544448 at *2 (E.D. Pa. 2006). Given the significance of a GAF score of 38, the ALJ's placement of "great weight" on Dr. Mishra's findings in making his disability determination is highly troublesome.

A similar problem exists with an outpatient psychiatric evaluation prepared by Dr. Brenneman, one of Whatley's treating psychiatrists, in February 2005. Dr Brenneman assigned Whatley a GAF score of 45, placing her highest score during the prior year at "around 50".(R. 455). The ALJ identified Dr. Brenneman's report, too, as one given great weight in his finding that the claimant was not disabled. (R. 19). The ALJ's failure in this instance to address GAF scores indicative of a disability is likewise puzzling.

Finally, the court turns to the ALJ's treatment of the findings and records generated by Gary Panichella, the licensed clinical social worker who counseled Whatley multiple times during the period of the alleged disability.  In a mental impairment questionnaire completed in November 2006, Panichella assigned Whatley a GAF score of 56, and stated that her highest score during the past year was a 60. He concluded that the claimant was moderately limited in her activities of daily living, markedly limited in the area of social functioning, and extremely limited in her ability to maintain concentration, persistence, or pace. (Tr. 458). He also noted that Whatley had suffered three extended

episodes of decompensation. Id.  When asked to evaluate Whatley's ability to adjust to a job, Panichella responded that the claimant had fair ability to follow work rules, relate to co-workers, exercise judgment, interact with supervisors, carry out other than complex job instruction, maintain her personal appearance, behave in an emotional[ly] stable manner, demonstrate reliability, and function independently. She had poor or no ability to deal with work stresses, to maintain attention and concentration, to remember and carry out complex instructions, and to relate predictably in social situations. (R. 463 - 464).

The ALJ commented briefly on this report, stating:

> [I]t is noted that [this] report was signed by a social worker. Therefore, the report is not from an acceptable medical source. 20 C.F.R. 416.913(a).[4] In addition, the social worker presents no treatment or examination notes to support such conclusions. As such, the social worker's conclusion that the claimant is disabled has been given significantly reduced weight."

(R. 18).

In fact, the record includes twenty-nine pages of notes documenting that Panichella participated in multiple counseling sessions with Whatley. (R. 405 -434).  The ALJ's statement with respect to these notes is ambiguous. It could be read to say that

---

[4]Whatley argues that the ALJ was obligated to consider Panichella's evidence under the standards set out in SSR 06-03p. This ruling, which addresses how opinions from sources who are "not acceptable medical sources" should be considered, did not take effect until after the ALJ's decision was issued. On remand, the ALJ will have the benefit of the guidance embodied in this ruling in evaluating and discussing the records provided by Panichella.

he considered the notes, but did not find that they supported Panichella's conclusion with respect to disability, or - just as reasonably - that the ALJ did not realize that Panichella's notes were in the record, and did not consider them at all.

The court has reviewed the record against the background of the ALJ's opinion, and concludes that the ALJ's discussion of the evidence is inadequate. The failure to address certain items in the record leads the court to conclude that the ALJ failed to consider evidence that can be read to support Whatley's claim. The Court of Appeals for the Third Circuit has stressed that "the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in *explicitly weighing all evidence.*" Doborwshy v. Califano, 606 F.2d 403, 406 (3d Cir. 1979)(emphasis added). "Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [he] has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)(quoting Arnold v. Secretary of HEW, 567 F.2d 258, 259 (4th Cir. 1977)). The ALJ's use of boilerplate language stating that he has given "careful consideration [to] the entire record" is insufficient to constitute adequate development

of the administrative record. Greene, 2006 WL 1791264 at * 6 n.8.

Since it is the function of the ALJ, not the courts to evaluate the evidence, *see* Fargnoli, 247 F.3d at 42, remand for reconsideration and discussion of the relevant evidence is appropriate. This is not to say that the outcome will be different. In his brief on appeal, the Commissioner has thoroughly summarized the evidence and argued that it does not support a finding that Whatley is disabled. In discussing this evidence, the Commissioner has pointed to parts of the record supporting the contention that substance abuse played a major role in Whatley's mental impairments. The rationale for the decision in Whatley's case given by the Commissioner on appeal, does not, however, square with the analysis articulated by the ALJ.

This court is not authorized to substitute the Commissioner's analysis on appeal for a discussion of the evidence undertaken by the ALJ. Nor is the Court authorized to conduct a *de novo* review of the evidence. Evaluation and discussion of the record evidence is the province, in the first instance, of the ALJ. *See* Fargnoli, 247 F.3d at 42.

### III. **CONCLUSION**

The court recommends that this matter be remanded pursuant to sentence four of 42 U.S.C. §405(g) in order to give the ALJ the further opportunity to review and properly analyze the evidence of

record in light of this Report and Recommendation.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b)(1)(B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by August 3, 2007. Responses to objections are due by August 13, 2007.

July 19, 2007

/S/ Francis X. Caiazza  
Francis X. Caiazza  
U.S. Magistrate Judge

cc:

Counsel of Record  
Via electronic mail